# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# Ocala Division

| | |
|---|---|
| KATHRYN FRANK, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DEFAMATION** |
| -v.- | **Demand for Jury Trial** |
| LISA MARIA SCHICK, | |
| Defendant. | |

Plaintiff KATHRYN FRANK ("Plaintiff"), through her undersigned counsel, brings this lawsuit against Defendant LISA MARIA SCHICK ("Defendant") and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action following a months-long smear campaign against her by Defendant, culminating in a November 14, 2023 complaint Defendant filed with the Florida Department of Financial Services ("DFS") regarding two life insurance policies Defendant and her husband procured with Plaintiff's assistance.

2. After filing five false complaints about Plaintiff vis-à-vis the procurement of the life insurance policies in various forums, all of which were carefully reviewed and rejected, Defendant filed a sixth complaint with the Florida

DFS and, in subsequent communications with one of its administrators, repeated the same lies about Plaintiff and the policies.

3. Before Plaintiff could defend herself against Defendant's blatant falsehoods, non-party Ameritas Life Insurance Corporation ("Ameritas"), which issued the policies, acceded to Defendant's pressure tactics and rescinded the policies, returned Defendant and her husband's premiums, and charged back all the commissions paid to Plaintiff, despite acknowledging, in writing and orally, that Plaintiff had done nothing wrong.

4. To restore her professional reputation, Plaintiff now seeks to hold Defendant accountable for her defamatory statements made on and after November 14, 2023.

## PARTIES

5. Plaintiff is a natural person domiciled at 17837 Blue Heron Ct., Montgomery, TX, 77316.

6. Defendant is a natural person domiciled at 3631 North Lakeside Village Drive, Beverly Hills, Florida 34465.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Parties and there is more than $75,000 in controversy.

8. This Court has personal jurisdiction over Defendant because she is domiciled in Florida.

9. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(1) and (2) because this action is brought in the judicial district where Defendant resides and where a substantial part of the events or omissions giving rise to this Complaint occurred.

## LIFE INSURANCE POLICIES

10. From approximately June 2018 to June 2024, Frank was a full-time life insurance agent at non-party Ameritas.

11. As an agent, Frank helped her clients procure life insurance policies, including Defendant and her husband, non-party Charles Schick.

12. Plaintiff was introduced to Defendant on or about September 15, 2021 by Plaintiff's co-agent and Defendant's financial advisor, Mitchell Rubin.

### Lisa Policy

13. On December 16, 2021, Defendant applied for an indexed universal life insurance policy, seeking $7,546,014 in coverage for a $450,000 annual premium.

14. Defendant and her husband, Charles Schick, are and were sophisticated investors who developed a very intricate investment strategy geared toward reducing their taxes and enhancing their retirement income.

15. On April 25, 2022, the application was approved and the policy, no. I00041904A ("Lisa Policy"), was issued.

16. On May 16, 2022, the amount of coverage was amended to $10,259.392.

17. On or around May 16, 2022, a full copy of the Lisa Policy and a sales illustration were delivered to Defendant, as evidenced by a policy delivery receipt and sales illustration sheet, both of which Defendant signed.

18. By signing the sales illustration, Lisa acknowledged her obligation to pay an annual premium of $800,000 for the first seven years of the Lisa Policy.

19. On August 18, 2022, the Lisa Policy was assigned to Ameris Bank.

**Charles Policy**

20. On December 16, 2021, Charles Schick applied for an indexed universal life insurance policy, seeking $7,663,914 in coverage for a $550,000 annual premium.

21. On April 25, 2022, the application was approved and the policy, no. I00041900A ("Charles Policy"), was issued.

22. On May 18, 2022, the amount of coverage was amended to $756,816, with a supplemental coverage rider in the amount of $1,135,224.

23. On or around May 18, 2022, a full copy of the Charles Policy and a sales illustration were delivered to Charles, as evidenced by a policy delivery receipt and sales illustration sheet, both of which Charles signed.

24. By signing the sales illustration, Charles acknowledged his obligation to pay an annual premium of $200,000 for the first seven years of the Charles Policy.

25. On August 29, 2022, the Charles Policy was assigned to Ameris Bank.

26. Prior to the consummation of any transactions involving Plaintiff and Defendant, the transactions were reviewed or recommended and approved by both Plaintiff's co-agent, Mitchell Rubin, and Defendant's certified public accountants, Grassi Franchise Services, LLC, for both investment and tax purposes.

## DEFENDANT'S FIRST COMPLAINT

27. On July 5, 2023, via an email Mitchell Rubin, Defendant made her first complaint regarding Plaintiff and the Policies, alleging that Plaintiff "knowingly oversold us [the Policies] by intentionally withholding critical information," among other allegations. A complete and correct copy of Defendant's July 5, 2023 email is attached as **Exhibit A**.

28. Defendant requested that the Policies be rescinded and that all advisory fees be refunded. *Id.*

29. Defendant's email complaint prompted an investigation by Ameritas and Plaintiff's broker dealer, NEXT Financial ("NEXT"), regarding the issuance of the Policies.

30. On August 14, 2023, via letter, John T. Unger general counsel at NEXT, informed Defendant that her allegations were unfounded. "[W]e find that you were provided complete and accurate information concerning the advisory fees to be charged…There was nothing misstated, misrepresented, or unstable with respect to these investments, and you received and acknowledged the pertinent information." A complete and correct copy of Unger's August 14, 2023 email is attached as **Exhibit B**.

31. NEXT, accordingly, "respectfully decline[d] [Defendant's] request to receive a refund of advisory fees."

## DEFENDANT'S SECOND COMPLAINT

32. On July 13, 2023, via email, Defendant made her second complaint regarding Plaintiff and the Policies, filing a compliance complaint with Ameritas requesting that the Polices be rescinded "as they were intentionally sold for the sole purpose of the agent's financial gain through our financial loss and hardship." A complete and correct copy of Defendant's July 13, 2023 email is attached as **Exhibit C**.

33. On August 3, 2023, via letter, Emmett Holloway, lead compliance analyst at Ameritas, informed Defendant that, after investigating her allegations, there was no "evidence of any misrepresentations" regarding the sale of the Policies. A complete copy of Holloway's August 3, 2023 letter is attached as **Exhibit D**.

34. "In light of the evidence, we have not found a basis to depart from the terms of the contracts." *Id.*

## DEFENDANT'S THIRD, FOURTH, AND FIFTH COMPLAINTS

35. On September 14, 2023, Defendant filed a complaint with the New Jersey of Insurance ("DOI"), no. 491661, seeking to void the Policies.

36. Because the Policies were issued in Florida, Defendant was advised to file a claim there.

37. On September 30, 2023, Defendant filed a complained with the Florida DFS, no. T-23-14673, seeking to void the Policies.

38. Because Plaintiff is domiciled in Texas, Defendant was advised to file a claim there.

39. On September 29, 2023, Defendant filed a complaint with the Texas Department of Insurance ("DOI"), no. 374365, seeking to void the Policies. A complete copy of the Texas DOI's November 7, 2023 letter enclosing the September 29, 2023 complaint is attached as **Exhibit E**.

40. Because the Policies were issued in Florida, Texas did not have jurisdiction to hear the complaint, so the Texas DOI closed the complaint on November 10, 2023. A complete copy of the Texas DOI's November 10, 2023 email is attached as **Exhibit F**.

## DEFENDANT'S SIXTH COMPLAINT

41. On November 14, 2023, Defendant filed a complaint with the Florida DFS, no. 1-1145380432. A complete copy of the Florida DFS' November 14, 2023 confirmation email is attached as **Exhibit G**.

42. On December 18, 2023, via email, Robert Condon (an insurance regulation administrator at the Florida DFS) requested additional information from Defendant regarding her complaint. A complete copy of Condon's December 18, 2023 email is attached as **Exhibit H**.

43. On December 19, 2023, via email, Defendant made untrue and defamatory statements to Condon regarding Plaintiff and the issuance of the Policies. A complete copy of Defendant's December 19, 2023 email is attached as **Exhibit I**.

44. Defendant told Condon that "[Plaintiff] sold us 2 insurance policies that from day one have been destined to fail." *Id.*

45. Defendant told Condon that "[Plaintiff] took control of our assets away from us and in addition, we have been paying $7,800 a month which will continue to increase each year!" *Id.*

46. Defendant told Condon that "[w]e have since learned that [Plaintiff] opted at our expense to take her commissions upfront and never told us there was an option to have No [sic] surrender charges on the policies to increase her commission." *Id.*

47. Defendant told Condon that "our best option is to have the polices rescinded or voided because...[of Plaintiff] lying throughout the application which is fraud." *Id.*

48. Defendant again told Condon that "[Plaintiff] lied throughout the application." *Id.*

49. Defendant told Condon that "[Plaintiff] has lied to us throughout the process and has caused us tremendous stress as our financial loss has been both her and Ameritas Life Insurance's gain." *Id.*

50. Defendant told Condon that: "We reached out to Ameritas on 8/28/23 and requested they [the policies] be rescinded but after they acknowledged our original email on 8/31/23 they have not responded even after we sent a second email on 9/13/23 asking for a response." *Id.*

51. Defendant told Condon that Plaintiff sold policies "where she is not licensed." *Id.*

52. Defendant told Condon that Plaintiff "lied about our income which she inflated by 300%". *Id.*

53. Defendant told Condon that "The original application/contract states we were in FL which was a lie and the income stated is also a lie." *Id.*

54. Defendant told Condon that the "policies were unsuitable for my husband and me from the start and were only sold solely to financially benefit the agent [i.e. Plaintiff] and to financially defraud us." *Id.*

55. On December 28, 2023, via email, Condon informed Defendant that he had "[e]verything needed to try and resolve this matter" and that he had contacted Ameritas. A complete copy of Condon's December 28, 2023 email is attached as **Exhibit J**.

56. On December 28, 2023, via letter, Defendant also received official confirmation regarding receipt of her complaint. A complete copy of the Florida DFS' December 28, 2023 letter is attached as **Exhibit K**.

57. The letter advised Defendant that, pursuant to § 624.307(10)(b), Ameritas would have 14 days to respond to and potentially resolve Defendant's claim. *Id.*

## AMERITAS' RESPONSE TO FLORIDA DFS

58. On December 28, 2023, via letter, Condon contacted Ameritas regarding Defendant's claim. A complete copy of Condon's December 28, 2023 letter is attached as **Exhibit L**.

59. "Based on what appear to be multiple violations of statute and FAC by the agent [i.e., Plaintiff], to include suitability, our Department," Condon wrote, "requests the company immediately afford Mr. and Mrs. Schick a settlement and release, rescinding the polices and return all premiums received from them." *Id.*

60. This letter prompted another investigation at Ameritas.

61. On January 9, 2024, via letter, Holloway issued a response to the Condon's December 28, 2023 letter. A complete copy of this January 9, 2024 letter is attached as **Exhibit M**.

62. Holloway informed the Florida DFS that the "records we have reviewed indicate that all important features of this policy, including the planned premiums, policy sots and surrender charges were properly disclosed and agreed to up front. We are not able to find evidence of any misrepresentations." *Id.*

63. On January 10, 2024, via email, Condon informed Holloway that his January 9, 2024 letter was "incomplete" and requested a complete response by January 11, 2024. A complete copy of Condon's January 10, 2024 email is attached as **Exhibit N**.

## PLAINTIFF'S RESPONSE TO FLORIDA DFS

64. On January 31, 2024, via email, Condon first contacted Plaintiff regarding Defendant's complaint. A complete copy of Condon's January 31, 2024 email is attached as **Exhibit O**.

65. The email advised Plaintiff that the Florida DFS had received "the response you provided via Ameritas Life and received by our Department on 1/26/24." *Id.*

66. The email requested "all documentation pertaining to the sale of the [Policies]." *Id.*

67. Despite the email's use of the word "you," this email was the first time Plaintiff was made aware of Defendant's November 14, 2023 complaint.

68. On February 16, 2024, via letter, Joshua Katz (Plaintiff's personal attorney) refuted the Defendant's complaint in detail. A complete copy of Katz's February 16, 2024 letter is attached as **Exhibit P**.

69. "As clearly shown by the information, above, and the documents attached hereto, Mrs. Frank correctly and accurately identified the Schicks' gross income, and there are no other claims that any other information on the application was false." *Id.*

70. "Based on the application and the circumstances discussed above, it is clear this was a suitable investment for the Schicks." *Id.*

## RESCISSION OF THE LIFE INSURANCE POLICIES

71. On January 30, 2024, Todd Scott (Ameritas' regional vice president) called Plaintiff's husband, non-party David Frank, advising him of Defendant's November 14, 2023 complaint.

72. A call with Jeff Graves (Ameritas' senior vice president) was scheduled for January 31, 2024.

73. On January 31, 2024, at approximately 2:30PM, via phone, Graves and Scott informed David Frank that Ameritas had decided to rescind the Policies, return the premiums to Defendant and her husband, and chargeback all the commissions paid to Plaintiff, which totaled more than $400,000.

74. During the January 31, 2024 phone call, Graves expressly acknowledged that Plaintiff had done nothing wrong vis-à-vis the sale of the Policies.

75. When David Frank questioned how the Florida DFS could order the rescission of the Policies without giving Plaintiff an opportunity to defend herself, Graves referred him to Scott Farman (Ameritas' compliance vice president).

76. On January 31, 2024, at approximately 3:00 P.M., via phone, David Frank participated in a call with Scott and Farman.

77. During the phone call, Farman represented that, after receiving a demand letter from the Florida DFS, Ameritas rescinded the Policies.

78. During the phone call, Farman repeatedly reiterated that Ameritas had no choice but to return the premiums and claw back the commissions based on the Defendant's November 14, 2023 complaint.

79. Coincidentally, on January 31, 2024, Plaintiff received Condon's email requesting documentation. **Exhibit O**.

80. Because the Policies had been rescinded on or shortly after January 31, 2024, the Florida DFS apparently never considered Plaintiff's February 16, 2024 letter.

## POST-RESCISSION CORRESPONDENCE

81. On November 25, 2024, Plaintiff, through her counsel, sent Defendant a notice and demand letter regarding her defamatory statements. A complete copy of this November 25, 2024 letter is attached as **Exhibit Q**.

82. The November 25, 2024 letter articulates at least seven false and defamatory statements made by Defendant about Plaintiff to Florida DFS, including, but not limited to that Defendant and her husband never received their Ameritas policies, never signed delivery receipts for the Ameritas policies, never were provided the sales illustrations for the Ameritas policies, that defendant and her husband were residents of New Jersey when the Ameritas policies were sold, that Plaintiff overstated the Defendant's income on the application for the Ameritas policies, that Plaintiff improperly executed trades and transfers in Defendant's investment accounts and that Plaintiff was not a licensed insurance agent in Florida. *Id.*

83. Defendant made these defamatory misrepresentations about Plaintiff to Florida DFS on or after November 14, 2023 knowing that they were false and for the sole purpose of impugning Plaintiff and damaging Plaintiff's reputation in her profession as a life insurance agent. *Id.*

84. On January 17, 2025, Plaintiff, through her counsel, sent Defendant another notice and demand letter regarding her defamatory statements. A complete copy of this January 17, 2025 letter is attached as **Exhibit R**.

85. Since January 17, 2025 Plaintiff and Defendant, through their respective attorneys, have been attempting to mediate the case, but have been unable to agree on available dates.

## COUNT I: DEFAMATION PER SE

86. Plaintiff re-alleges Paragraphs 1-85 as if fully set forth herein.

87. Defendant's statements about Plaintiff, including those set forth in Paragraphs 41 through 54 and 78 of this Complaint, are defamatory per se.

88. These statements were published to the Florida DFS and its insurance regulation administrator, Robert Condon, who then shared them with Ameritas.

89. These statements are false, as demonstrated by Emmett Holloway's August 3, 2023 and John T. Unger's August 14, 2023 letters, both of which Defendant received prior to filing her November 14, 2023 complaint with the Florida DFS.

90. Defendant maliciously made these statements, knowing they were false, as her primary purpose was to cause Plaintiff professional and personal harm.

91. These false statements all impute conduct that it is incompatible with Frank's profession as an insurance agent and intended to destroy Frank's reputation as an insurance agent.

92. As a result of Defendant's defamatory statements, Plaintiff has suffered damage to her reputation, economic damage including the loss of her commissions and expenditures for attorneys' fees to defend against Defendant's false claims, the termination of her contract with Ameritas and resulting loss of income and economic damage.

WHEREFORE, Plaintiff demands judgment against Defendant for general, special, and punitive damages, court costs, and such other relief the Court deems just and proper.

## COUNT II: DEFAMATION PER QUOD

93. Plaintiff re-alleges Paragraphs 1-85 as if fully set forth herein.

94. Defendant's statements about Plaintiff, including those set forth in Paragraphs 38 through 54 and 82 of this Complaint, are defamatory.

95. These statements were published to the Florida DFS and its insurance regulation administrator, Robert Condon, who then shared them with Ameritas.

96. These statements are false, as demonstrated by Emmett Holloway's August 3, 2023 and John T. Unger's August 14, 2023 letters, both of which Defendant received prior to filing the November 14, 2023 complaint.

97. Defendant maliciously made these statements, knowing they were false, as her primary purpose was to cause Plaintiff personal and professional harm.

98. These statements have damaged Plaintiff, causing her to lose the commissions she received vis-à-vis the Policies, be terminated from her relationship with Ameritas, suffer ongoing loss of income, suffer reputational harm, and suffer mental anguish.

99. As a result of Defendant's defamatory statements, Plaintiff has suffered damage to her reputation, economic damage including the loss of her commissions and expenditures for attorneys' fees to defend against Defendant's false claims, the termination of her contract with Ameritas and resulting loss of income and economic damage.

WHEREFORE, Plaintiff demands judgment against Defendant for general, special, and punitive damages, court costs, and such other relief the Court deems just and proper.

## COUNT III: CLAIM FOR PUNTIVE DAMAGES

100. Frank re-alleges Paragraphs 1-85 as if fully set forth herein.

101. Plaintiff is entitled to punitive damages pursuant to applicable law and Fla. Stat. § 768.72.

102. At all times pertinent to this action, the investigations conducted and/or information provided by John T. Unger, Emmett Holloway, and Joshua Katz proved the statements made by Defendant in her communications with the Florida Department of Financial Services, including her December 19, 2023 email to Robert Condon (**Exhibit I**), were false.

103. At all times pertinent to this action, the statements made by Defendant to the Florida Department of Financial Services, including her December 19, 2023 email to Robert Condon (**Exhibit I**), were intentionally and maliciously published to third parties to Plaintiff's detriment and prejudice and were defamatory per se and/or defamatory per quod.

104. At all times pertinent to this action, Defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference of Plaintiff's rights.

105. At all times pertinent to this action, Defendant had actual knowledge of the wrongfulness of her conduct and the high probability that injury or damage to Frank would result. Despite that knowledge, Defendant intentionally pursued her course of conduct (defamatory remarks), resulting in injury and damage to Plaintiff.

106. As a result of Defendant's intentional defamation, Plaintiff suffered damage to her reputation and economic damages in the form of expenses (attorney's fees) to defend her name and loss of commissions and loss of income and economic damages relating to Plaintiff's termination from Ameritas.

WHEREFORE, Plaintiff KATHRYN FRANK demands judgment against Defendant LISA MARIA SCHICK for special and punitive damages, court costs, and such other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 9, 2025  
      Miami, FL

**WILSON, ELSER, MOSKOWITZ, EDELMAN, & DICKER, LLP**

By: */s/ Gustavo Martinez Tristani*
Gustavo A. Martinez-Tristani, Esq. [FBN: 668575]
Gustavo.Martinez-Tristani@wilsonelser.com
Kaylin S. Grey, Esq.[FBN.75344]
Email: kaylin.grey@wilsonelser.com
100 Southeast Second Street, Suite 2100
Miami, FL 33131
Tel: (305) 395–5593
*Attorneys for Plaintiff, Kathryn Frank*